■ HERZFELD & STERN, INC., Plaintiff, v WARREN BECK, De-

fendant. (Action No. 1.) WARREN BECK, Respondent, v HERZFELD & STERN, INC., Appellant. (Action No. 2.)—Order of the Supreme Court, New York County (Walter M. Schackman, J.), entered on July 5, 1990, which denied defendant's motion pursuant to CPLR 3212 for summary judgment dismissing the complaint and granted plaintiff's cross-motion to amend the complaint to add a demand for special damages, is unanimously reversed on the law, without costs or disbursements, defendant's motion for summary judgment dismissing the complaint granted and plaintiff's cross-motion denied. The clerk is directed to enter judgment in favor of defendant dismissing plaintiff's complaint in Action No. 2.

Until March 30, 1984, plaintiff Warren Beck was employed by defendant Herzfeld & Stern, a registered securities broker and dealer, as a research analyst and securities representative. Following his dismissal from the company, defendant, in compliance with regulatory requirements, filed a Uniform Termination Notice for Securities Industry Registration (U-5 notice), dated April 26, 1984, which advised, among others, the Securities and Exchange Commission and the New York Stock Exchange (NYSE) that plaintiff was no longer associated with Herzfeld & Stern. The reasons stated for Beck's termination included that he had (1) failed to obtain proper permission before entering orders to purchase securities for a customer who was a control person of the company whose securities were being acquired; (2) purchased without first seeking permission those securities through a margin account, thus exposing the firm's capital to undue risk; and (3) failed to know his customer. This U-5 notice superceded a prior one that did not contain the foregoing charges because, defendant claims, the facts were not fully known at the time.

Upon receipt of the second U-5 notice, the NYSE instituted an investigation into Beck's conduct. Accordingly, Charles A. Wills, Senior Enforcement Investigator of its Department of Enforcement, requested information from Herzfeld & Stern relating to the accusations against plaintiff. In response, defendant wrote two letters to Wills, dated June 3, 1984 and June 8, 1984. The complaint in the instant matter alleges four causes of action for libel and defamation, one each being founded upon the U-5 notice of April 26, 1984 and defendant's two communications to Wills and a fourth claim asserting prima facie tort. This appeal is from the denial by the Supreme Court of defendant's subsequent motion pursuant to CPLR 3212 for summary judgment dismissal. In that regard, there is merit to the contention by Herzfeld & Stern that

since the writings in question were prepared in connection with a quasi-judicial proceeding, they are absolutely privileged.

According to the Court of Appeals in *Toker v Pollak* (44 NY2d 211, 218), "[p]ublic policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action". Thus, statements uttered in the course of a judicial or quasi-judicial proceeding are absolutely privileged so long as they are material and pertinent to the questions involved notwithstanding the motive with which they are made *(Wiener v Weintraub,* 22 NY2d 330; *see also, Toker v Pollak, supra).* An administrative function is considered quasi-judicial when it is adversarial, results in a determination that derives from the application of appropriate provisions in the law to the facts and is susceptible to judicial review *(Park Knoll Assocs. v Schmidt,* 89 AD2d 164, *revd on other grounds* 59 NY2d 205). Moreover, the absolute privilege attaches not only to the hearing stage, but to every step of the proceeding in question even if it is preliminary and/or investigatory and irrespective of whether formal charges are ever presented *(see, Weiner v Weintraub, supra; Sullivan v Board of Educ.,* 131 AD2d 836; *Meyers v Amerada Hess Corp.,* 647 F Supp 62 [SD NY]).

The New York Stock Exchange and, specifically, its Department of Enforcement clearly perform as a quasi-judicial body (15 USC § 78a *et seq.).* The relevant Federal provisions have established a comprehensive system of oversight and self-regulation by the NYSE over its own actions in order to ensure adherence by members of the industry to both the statutory mandates and ethical standards of the profession *(see, Merrill Lynch, Pierce, Fenner & Smith v National Assn. of Sec. Dealers,* 616 F2d 1363). Since the NYSE is authorized to inquire into whether one of its members or an employee thereof should be disciplined for violating a particular section of the law or pertinent rule or regulation, a process which is adversarial in nature and affords the subject of the investigation due process protections *(see,* 15 USC § 78f), including the right to appeal (15 USC § 78s [d]), it certainly conforms to the requirements of a quasi-judicial administrative proceeding. Moreover, the writings under dispute herein were material and pertinent to whether plaintiff had contravened any Federal statute or securities rule or regulation. The U-5 notice, which Herzfeld & Stern was compelled by law to file, in effect initiated the NYSE's investigation with respect to plaintiff's conduct, and the two letters were the direct result of a solicitation for

information by its Department of Enforcement. Consequently, the communications which are the subject of the plaintiff's complaint are absolutely privileged, and the fourth claim for prima facie tort is dependent upon the existence of some actionable libelous or defamatory statement. Defendant is, therefore, entitled to summary judgment dismissing the complaint against it. Under these circumstances, it is unnecessary to reach the issue of whether plaintiff has demonstrated that he suffered any damages from the subject communications. Concur—Murphy, P. J., Milonas, Ellerin, Wallach and Smith, JJ.